:UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| v. | : Case No. 1:24-cr-216 |
| | : |
| **EDUARDO ALBERTO ZELAYA VIDES** | : |
| | : |
| **Defendant.** | : |

**MOTION FOR EMERGENCY STAY AND
FOR REVIEW OF RELEASE ORDER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court first, to stay a defendant's release pending trial, and second, to review the decision by the Magistrate Judge from the United States District Court for the Northern District of California, to deny the government's motion for pre-trial detention.

In support thereof, the government states the following:

### I. BACKGROUND

#### A. Procedural Posture

On May 10, 2024, the defendant Eduardo Alberto Zelaya Vides was arrested in the state of California on an arrest warrant issued out of the United States District Court for the District of Columbia by Magistrate Judge Zia M. Faruqi in connection with a Criminal Complaint charging the defendant with one count of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2). The arrest warrant and Complaint were issued on May 3, 2024.

On May 8, 2024, the defendant was indicted by a grand jury sitting in the District of Columbia and charged with Child Exploitation Enterprise in violation of 18 U.S.C. § 2252A(g);

1

Conspiracy to Distribute or Receive Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) & (b)(1), and Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) &(b)(2).

At his initial appearance in the U.S. District Court for the Northern District of California, on May 10, 2024, the United States moved to detain the defendant without bond pending trial pursuant to 18 U.S.C. § 3142(f)(1)(A), which provides for a rebuttable presumption of detention in cases involving crimes of violence as defined by 18 U.S.C. § 3156.  18 U.S.C. § 3156 defines a "crime of violence" to include a violation of Title 110, which includes violations of 18 U.S.C. §§ 2252A(g), and 2252(a)(2).  Further, these offenses give rise to a rebuttable presumption under 18 U.S.C. § 3142(e)(3)(E), that there are no conditions or combination of conditions that will reasonably ensure the safety of any other person or the community if the defendant were to be released.

A detention hearing was held on May 13, 2024, before Magistrate Judge Nathanael M. Cousins in the Northern District of California.  The defense argued for the defendant's release and the government opposed his release, citing the rebuttable presumption and the defendant's offense conduct, including his active participation in an on-line group dedicated to the sharing of child sexual abuse material involving dozens of child victims.  In addition, the government cited additional dangerous conduct by the defendant, including the defendant's attempt to persuade an undercover police officer in a private chat to sexually abuse his purported daughter and to share sexually explicit photos or videos of his purported daughter with him.  In addition, the government shared with the court the defendant's statements to the undercover officer about trying to get alone time with his nine-year-old niece, and his desire to "train an [sic] bunch of little sluts" if he were to find a "perv single mom" who would give him access to her child. Despite this evidence, Magistrate Judge Cousins released the defendant with conditions,

including GPS monitoring. An AUSA in the United States Attorneys' Office for the Northern District of California immediately moved to stay the decision in that court for the purpose of effectuating this filing. That oral motion was granted, and Magistrate Judge Cousins issued a stay until 11:00 a.m. Eastern Standard Time/ 2:00 p.m. Pacific Time.

 B. **Factual Background**

  **Defendant's Participation in a KIK Group Dedicated to the Exchange of Child Pornography**

  The United States sought an arrest warrant for Vides based upon his conduct related to his participation in an on-line group engaged in the exchange of child pornography and his distribution of child pornography to member of that group, which included an undercover police officer located in Washington, D.C. On March 21, 2024, a Federal Bureau of Investigation (FBI) Task Force Officer (TFO) assigned to the Washington Field Office's Child Exploitation and Human Trafficking Taskforce (CEHTTF) was acting in an undercover capacity from an office in the District of Columbia, when he entered a KIK group ("Group 1") that he had been monitoring for approximately two weeks.[1] The undercover officer (UC) observed members of Group 1 discussing sexual fetishes including incest with children. The UC also observed members of Group 1 posting images depicting the sexual abuse of children.

  At approximately 6:51 a.m. EST on March 21, 2024, the UC observed a member of Group 1 send an invitation to other members of the group to join another KIK group ("Group 2") which the member had newly created. The UC joined Group 2, which was called "Limitless."[2] When he joined Limitless, the UC observed a rules banner appear describing the rules for the group

---

[1] Kik is an instant messaging mobile application where one can transmit and receive messages, photos, and videos. Users can communicate privately with other users or in groups.
[2] Eastern Standard Time (EST) is used as the default time zone in this document.

3

members to follow. The banner read: "Welcome! You have 6 minutes to send 2 videos before kick. Once you have access try to post daily. This is an active group only. Enjoy!" The UC then observed members of Limitless posting various pornographic images and videos, some of which included prepubescent children engaged in sexual acts.

Between March 21, 2024, and April 21, 2024, the UC observed at least eight different members of the Limitless Group posting to the group chat dozens of child pornography videos, which depicted the sexual abuse of dozens of different child victims. Members of the Limitless group, including the defendant, commented on child sexual abuse material posted by other members, encouraged fellow group members to post more child sexual abuse material, and posted videos to the group themselves, which depicted minors engaged in sexually explicit conduct.

On March 21, 2024, the UC observed a Limitless user with the display name "walter W" and the username "edwardanarchy," who was later identified as the defendant Eduardo Alberto Zelaya Vides, enter the Limitless Group and say "good morning" before posting a video to the group depicting a prepubescent girl being orally penetrated by an adult man's penis. On the same day, Vides posted a message to the group saying, "post your sluts," and then posted a video depicting a minor female wearing a rainbow t-shirt, seated with her naked vagina visible, touching her vagina.

On March 22, 2024, Vides again wrote to the group, "post your sluts," after which another group member posted two videos. The still images from the beginning of each video as captured in the chat appear to depict minor teenaged females engaged in sexually explicit conduct. Following the posting of those videos, Vides posted anther video. The still image from the beginning of that video shows a naked, squatting prepubescent girl whose naked vagina is exposed.

On that same day, in response to a photograph of nude pre-pubescent girls at a beach, Vides wrote, "nice. post your young sluts."

On March 23, 2024, Vides commented on child pornography videos posted in the group by other members by writing "lovely videos" and posting an emoji with a smiley face and heart eyes. Vides then posted a video to Limitless depicting a prepubescent boy inserting his penis into the vagina of an adult woman. On the same day, Vides wrote in the Limitless chat, "Post some videos, don't let this chat die." He then again posted the video depicting a minor female wearing a rainbow t-shirt, seated with her naked vagina visible, touching her vagina.

On March 24, 2024, Vides posted a video depicting a prepubescent female in white leggings who removed her leggings thereby exposing her naked vagina to the camera. She then touched her naked vagina. Another user then posted a video to the group, which depicted a prepubescent girl being vaginally penetrated by an adult man's penis, to which Vides replied, "yummy. Let's see some sluts." On that same day Vides posted additional child pornography videos to the Limitless group, including a video depicting a minor female being vaginally penetrated by an adult man's penis.

On March 25, 2024, in response to several child pornography videos posted by other group members the day before, Vides wrote, "beautiful little sluts," and then he posted two additional child pornography videos including one that depicted a minor girl wearing a white top inserting the handle of a toothbrush into her vagina and anus. The other video depicted a minor girl inserting a sex toy shaped like an adult penis into her vagina. On that same day, another group member wrote to the group stating that he had found, "a girl in Utah whose single and wants me to use her daughter. Said I can use her anyway I want too as long as I want." Vides replied, "That would be

5

hoy. Thatd be hot." Vides then posted three more child pornography videos including a video of a prepubescent girl sitting in a bathtub and touching her vagina with her hand while urinating.

On March 25, 2024, Edward anarchy posted a video of a prepubescent girl touching her naked vagina, and wrote, "cum all over her face."

On March 26, 2024, Vides wrote in the Limitless chat, "let's see those beautiful young sluts."

On March 27, 2024, Vides posted three videos depicting minor girls engaged in sexually explicit conduct. One of the videos depicted a minor female inserting a penis shaped object into her vagina. On that same day, another member of the group posted a photograph of a clothed prepubescent girl and asked the group members for comments. Vides responded, "cock slap that cute face."

On March 26, 2024, the UC participated in a private chat with Vides on Kik. During the chat, Vides told the UC that he had a nine year old niece an that he was "trying" to get alone time with her. Vides also expressed an interest in seeing pictures of the UC's purported minor daughter, and specifically instructed the UC to ejaculate on his purported daughter's lips so that she "starts getting used to the taste of daddy's cum."

During the chat, Vides asked the UC, "do you have any videos?" The UC responded, "Hey u a dad, I have a few of my daughter when she sleeps but don't like sending to many of those out." Vides wrote in reply, "I'd love to see those pics."

During the private chat on March 26, 2024, the following exchange occurred between the defendant and the UC regarding the defendant's niece and the UC's purported daughter:

> UC:    you have a little one?
> Vides: yes, mi niece.
> UC:    mmm how old.

      UC:    U get alone time.
      Vides:  9.
      Vides: Trying to.
      Vides: Have you had your daughter yet?
      UC:    Not fully just touch her when she sleeps
      Vides: Can I see?
      UC:    [Sends picture of adult hand lifting blanket to reveal child's foot[3]]
      Vides: do you jerk off watching her?
      UC :   yes
      Vides: that's so hot.
      Vides: Cum on her lips a bit, so she starts getting used to the taste of daddy's cum

Later in the chat with the undercover officer, Vides sent the UC a picture of an adult woman's naked vagina, claiming that it was his wife. Vides and the UC then discussed whether either of them were in a relationship with a woman who was interested in having sex with young children. Vides said to the UC, "is your wife into that? If she was, we would train a bunch of little sluts." The UC stated the was single but would "love to meet a young perv mom." Vides responded, "a perv single mom would be perfect."

## II. ORDER FOR RELEASE

On May 13, 2024, the defendant appeared for a detention hearing before Magistrate Judge Nathanael Cousins in the Northern District of California. Over the objection of the United States, Magistrate Judge Cousins released the defendant with conditions. An AUSA in United States Attorneys' Office for the Northern District of California immediately moved to stay that decision in that court for the purpose of effectuating this filing.

## III. ARGUMENT

Title 18, U.S.C. § 3145(a) states:

**(a) Review of a release order –** If a person is ordered released by a magistrate, …

> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release

---

[3] This photo is not of a real child.

. . .

The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the Magistrate Judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised. In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community? As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . .

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195-3196.[4]

---

[4] To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . *This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.*

Defendant is subject to detention pursuant to 18 U.S.C. § 3132(f)(1)(A) because he is charged with a crime of violence as defined by 18 U.S.C. § 3156(a)(4)(C) (defining a "crime of violence" as any felony violation under Chapter 110, which includes violations of 18 U.S.C. § 2252(a)(2) with which defendant is charged. The defendant cannot overcome the presumption of detention. As a result, the government requests review of Magistrate Cousins' decision to release defendant and seeks a further stay of the order from this Court.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:  /s/ Karen L. Shinskie
Karen Shinskie
DC Bar #1023004
Assistant United States Attorney
United States Attorney's Office
601 D Street, NW
Washington, DC 20530
Phone: (202) 730-6878

---

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3486-3487. (Emphasis added.)