# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | **Case Number: 24-cr-216 (BEH)** |
| **EDUARDO ZELAYA VIDES,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

## <u>GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing as the Court prepares to impose a sentence on the defendant, Edwardo Zelaya Vides, in this case. On February 7, 2025, the defendant entered a guilty plea to one count of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2). For the reasons below, the United States submits that a sentence of 151 months of incarceration, followed by fifteen years of supervised release, is "sufficient, but not greater than necessary" to comply with the purposes of sentencing. The United States also requests that the court order the defendant to participate in necessary treatment and to pay restitution in the amount of $111,500 for the child victims depicted in the child pornography at issue in this case.

## <u>BACKGROUND</u>

On March 21, 2024, a Federal Bureau of Investigation (FBI) Task Force Officer (TFO) assigned to the Washington Field Office's Child Exploitation and Human Trafficking Task Force (CEHTTF) was acting in an undercover capacity when he entered a chat group on the mobile application Kik, an instant messaging application. The KIK chat group was named "Limitless" and was dedicated to trading child pornography and discussing the sexual abuse of children. After joining the group, the UC observed a banner that appeared in the chat stating the rules for the group members

to follow.  The banner read:

> Welcome!  You have 6 minutes to send 2 videos before kick.  Once you have access try to post daily.  This is an active group only.  Enjoy!

The UC then observed at least eight members of Limitless, including the defendant, Eduardo Alberto Zelaya Vides, post various images and/or videos depicting minors engaged in sexually explicit conduct.  During the period from March 21, 2024, until April 21, 2024, Limitless group members posted dozens of child pornography videos to the group, depicting dozens of different children engaged in sexually explicit conduct.

On March 21, 2024, the UC observed the defendant post a message in the Limitless group stating, "good morning," and then post child pornography videos to the Limitless group, including a video depicting a prepubescent girl being orally penetrated by an adult man's penis.  Later that same day, the defendant wrote in Limitless, "post your sluts," after which he posted a video of a seated prepubescent girl wearing a t-shirt with a rainbow touching her naked vagina. Over the next several days, the defendant repeatedly posted videos in Limitless which depicted children engaged in sexually explicit conduct as that term is defined under 18 U.S.C. § 2256(2)(A), and then posted messages in the group urging other members to, "post your sluts," and, "post your young sluts." In total, the defendant posted four videos depicting child pornography.

On March 23, 2024, in response to child pornography videos posted by other members of the group, the defendant wrote, "lovely videos," and included a smiling face emoji with heart eyes.  He then posted a video of a prepubescent boy penetrating an adult female's vagina with his penis.  On the same day, the defendant posted to Limitless, "post some videos, don't let this chat die."  He then continued to post additional child pornography videos to the group and commented on the child pornography videos posted by other members of the group.

On March 24, 2024, the defendant posted several more child pornography videos to Limitless.

On March 26, 2024, the defendant asked the group if anyone had, "used their daughters yet?" Another Limitless member, replied, "I want someone that will share them with me."

On the same day, the UC participated in a private chat with the defendant on Kik, during which the defendant told the UC that he was "trying" to get alone time with his nine-year-old niece.[1] (ECF, No. 9).  During the same conversation, the defendant instructed the UC to ejaculate on his purported minor daughter's lips so that she "starts getting used to the taste of daddy's cum."  Later in the same chat, the defendant asked the UC if he's wife was into sex with children and commented, "if she was, we could train a bunch of little sluts."

Law enforcement arrested the defendant on May 10, 2024. Following a waiver of his *Miranda* rights, the defendant participated in a voluntary interview with law enforcement. The defendant admitted that he participated in Kik chatrooms, including the Limitless group.  The defendant stated that the Limitless group began as a chatroom for discussion and exchange of pornography.  He later admitted that he was aware that the pornographic images shared in the Limitless group depicted minors who were under 18 years old.  The defendant further admitted that he uploaded images to the Limitless chat.

On May 10, 2024, members of the FBI executed a search warrant at the defendant's home. During the search, agents recovered six digital devices, which belong to the defendant, including a black Samsung cellular phone (IMEI 350779535591981) (Evidence Item 1B1), a Samsung Galaxy 9 (Evidence Item 1B4), and a Blue/Black Samsung (Evidence Item 1B5).  Review of the contents of evidence Item 1B1, 1B4, and 1B5 revealed multiple image and video files depicting child pornography. A sample of some of the files found on these devices includes the following:

---

[1] The government's investigation did not uncover any evidence that the defendant had access any minors.

1. ***File 1_503065180606045176972.mp4*** is a video file, seven seconds in length, that depicts an adult licking the naked vagina of an infant girl.

2. ***File 50cd86-49a9-42c8-8391-2d47278d896c.mp4*** is a video file, eight seconds in length that depicts an adult male penetrating the vagina of a prepubescent girl with his penis as she cries out in pain and holds a stuffed animal in her mouth in an apparent effort to muffle the sound of her cries.

3. ***File 76186cc6-4e3e-431e-bbbc-9ef3b877f7d2.mp4*** is a video file, twenty-four seconds in length that depicts a prepubescent girl approximately five or six years old, lying on her back on a table, wearing a sweatshirt with cartoon characters and her pants and underwear removed, while an adult man is holding her legs apart and is penetrating her anus with his penis.

4. ***File c3ad3061-8927-4ab2-8a85-fd5cdbd95dc7.mp4*** is a video file, one minute and forty-four seconds in length that depicts an adult female rubbing her naked vagina, and vaginal secretions, on the face and mouth of an infant.

5. ***File e1d0631a-b161-491d-bbe6-731ef347a5d5.mp4*** is a video file, one minute forty-four seconds in length that depicts an adult man anally penetrating a naked prepubescent boy lying on a bed.

6. ***File e935bdfc-a4a3-4619-8743-d0d43814ec91.mp4*** is a video file, one minute thirty seconds in length that includes a compilation of videos depicting the sexual abuse of children, including videos depicting a prepubescent girl with her legs spread apart and bound to the posts of a bed while an adult man is vaginally penetrating her with his penis,  a naked prepubescent child who appears to be two or three years old lying face down on a bed while a naked adult man is straddling the child and pinning down the child's legs and holding the child's arms back, and anally penetrating the child with his penis.

In total, agents found more than 2,000 videos and images on the defendant's devices depicting the sexual abuse of children.   Some of the videos and images were duplicates.

On May 8, 2024, a Grand Jury indicted the defendant, along with co-defendant Brandon Manners, and co-defendant Luis Santos Perez, in a six-count indictment, in which defendant Zelaya Vides was charged with Child Exploitation Enterprise, in violation of 18 U.S.C. 2252A(g)(2); Conspiracy to Distribute or Receive Child Pornography in violation of 18 U.S.C. 2252(a)(2) and (b)(1); Advertisement of Child Pornography in violation of 18 U.S.C. 2251(d)(1) and (e); and Distribution of Child Pornography, in violation of 18 U.S.C. 2252(a)(2).   On February 7, 2025, pursuant to a written plea agreement, the defendant entered a plea of guilty to one count of Distribution of Child Pornography. Sentencing is scheduled for July 25, 2025.

## DISCUSSION AND RECOMMENDATION

### I.    Generally Applicable Legal Principles

In determining an appropriate sentence, a district court should begin all sentencing proceedings by correctly calculating the applicable guidelines range.  *See United States v. Gall*, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). Then, after giving both parties an opportunity to argue for an appropriate sentence, the district court should consider each of the applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. §

3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

## II.     Applicable Guidelines Range

Distribution of Child Pornography is governed in the first instance by U.S.S.G. § 2G2.2.  As set forth in the written plea agreement, the United States initially calculated the Sentencing Guideline's range as follows:

| | | |
|---|---|---|
| U.S.S.G. § 2G2.2(a)(2) | Base Offense Level | +22 |
| U.S.S.G. § 2G2.2(b)(2) | Prepubescent Minor | + 2 |
| U.S.S.G. § 2G2.2(b)(3)(F) | Knowing Distribution | + 2 |
| U.S.S.G. § 2G2.2(b)(4)(A) | Sadomasochistic Content | + 4 |
| U.S.S.G. § 2G2.2(b)(6) | Use of a Computer | +2 |
| U.S.S.G. § 2G2.2(b)(7) | 600+ Images | +5 |
| | Offense Total: | 37 |
| U.S.S.G. § 3E1.1(a) & 3E1.1(b) | Acceptance of Responsibility | -3 |
| | **Total** | **34** |

Based on the defendant's prior convictions his criminal history category is Category I.  *See* PSR ¶ 12.  A total offense level of 34 and a criminal history category of I, makes Defendant's advisory sentencing guidelines range 151-188 months' imprisonment and the applicable fine range is $35,000 to $350,000.

## III.     Government's Sentencing Recommendation

Here, the United States recommends a sentence of 151 months of incarceration, which reflects a downward variance of 31 months from the low-end of the Guidelines range.   Considering the defendant's early acceptance of responsibility, as well as the mitigating information described in the PSR, the United States submits that a sentence of 151 months incarceration, followed by fifteen years of supervised release, appropriately balances the § 3553 factors and is "sufficient, but not

greater than necessary" to comply with the purposes of sentencing.

## A.    Nature and Circumstances of the Offense

The defendant's participation in the Limitless Kik Group -- including his distribution of multiple child pornography videos and his repeated encouragement of others in the group to distribute child pornography -- is a very serious crime that merits a significant sentence.  As described above, the defendant, joined a KIK group which existed for the purpose of discussing the sexual exploitation of children and sharing child sexual abuse material. To gain entry to the group and remain in the group, members were required to actively post and share child sexual abuse material. The defendant repeatedly shared child pornography videos in the group, over the course of several days, and he y encouraged other members of the group to share child pornography, repeatedly imploring the group to "post your sluts" and "post your young sluts."   The defendants actions in the Limitless group served to encourage and normalize the sexual abuse of children.  Children depicted in images and videos depicting their sexual abuse are traumatized and victimized in the worst way imaginable at the time the images were created, and they are re-victimized each time an individual, like the defendant, views the images for their own sexual gratification. As explained by the Sixth Circuit in a child pornography case:

> ...we have numerous victims in a case like this, not one victim. Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of…children who are forced into these roles.

> ...every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

*See United States v. Miller*, 665 F.3d 114, 121-122 (6th Cir. 2011) (quoting the district court) (rejecting an attack on the child pornography sentencing guidelines and highlighting the grave harm caused to the victims depicted in child pornography images and the evidence that traffickers and possessors of child pornography are the impetus for the creation of more sexual abuse of minors).

The nature and circumstances of Zelaya Vides' crime weigh in favor of a lengthy sentence where he repeatedly distributed child pornography and encouraged others to do the same.

**B.      History and Characteristics of the Defendant**

The defendant's childhood sexual abuse, his depression and his use of illicit substances undoubtedly played a role in the choices that he made during the instant offense.  He has faced some hardships and instability throughout his life, some of which may have contributed to his behavior. Nevertheless, as a 31-year-old adult, the defendant's own choices to engage in unlawful sexual conduct must be paramount as the Court considers what sentence to impose.   Although the defendant has no significant criminal history involving the sexual exploitation of children, outside of the instance offense conduct, it is notable that when he was arrested, he was found to be in possession of a sizable collection of child sexual abuse material, which including over 2,000 digital files.  The volume of this collection suggests that the defendant has been deliberately seeking and accessing this material for some time.  The defendant's history and characteristics counsel in favor of a significant sentence of incarceration.

A period of 151 months of incarceration, followed by a fifteen years of supervised release, will limit his opportunities to commit further sex offenses against children and will provide some measure of protection to the community.

**C.      Seriousness of the Offense, Promotion of Respect for the Law, and Just Punishment for the Offense**

Child pornography offenses are extremely serious because they result in perpetual harm to

the most vulnerable victims, while simultaneously validating and normalizing the sexual exploitation

of children. Courts across the country have recognized this:

> There can be no keener revelation of a society's soul than the way in which it treats its children. Given the current statistics surrounding child pornography, we are living in a country that is losing its soul.
>
> Child pornography is a vile, heinous crime. Mention the term to your average American and he responds with immediate disgust and a sense of unease.  However, once it enters the legal system, child pornography undergoes sterilization. The sterilization goes far beyond properly removing emotion from sentencing decisions. Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of the defendants, sorry that their actions were discovered by law enforcement.

*United States v. Cunningham*, 680 F.Supp.2d 844, 847 (N.D. Ohio, 2010), *affirmed* 669 F.3d

723 (6th Cir. 2012).[2]

When enacting mandatory minimum penalties for those who produce and traffic in the sexual

abuse and exploitation of children, Congress similarly described the evil of child pornography:

> [W]here children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years . . . [The] existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children . . . it inflames the desires of . . . pedophiles . . . who prey on children, thereby increasing the creation of and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials.

Child Pornography Prevention Act of 1996, Pub.L. No. 104-208, § 121, 110 Stat. 3009, 3009-27

(1996).

There is perhaps no greater invasion of privacy than that caused by the dissemination of child

pornography.  With  a  click  of  the  button  on  a  camera,  the  sexual  abuse  of  these  children  is

---

[2] *See also In re Amy Unknown*, 636 F.3d 190, 201 n.12 (5th Cir. 2011) (*citing United States v. Norris*, 159 F.3d 926 (5th Cir. 1998) (describing how the distribution of child pornography creates a marketplace for images of children, perpetuating abuse); *United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir. 2005); *United States v. Grosenheider*, 200 F.3d 321, 332-34 (5th Cir. 2000).

memorialized forever. It is terrible enough that a child must live with the memory of his or her initial abuse. It is hard to even comprehend how that child could then learn to cope with the fact that strangers everywhere are using the worst moments of that child's life to sexually gratify themselves and that he or she can do nothing to stop them from continuing to do so. The only recourse that these children have is the strong enforcement of the laws that hold these offenders accountable for the tremendous damage they have inflicted upon countless child victims.

Distributors of child pornography, like the defendant, create a market and demand for materials depicting the sexual abuse and exploitation of real children. They contribute to the cycle of abuse and are in part responsible for the harm suffered by the children used to produce the materials in their collections. *See United States v. Goff,* 501 F.3d 250, 259-260 (3d Cir. 2007) ("Children are exploited, molested, and raped for the prurient pleasure of [defendant] and others who support suppliers of child pornography"). In *United States v. Goldberg,* the Seventh Circuit stated:

> The district judge was influenced by the erroneous belief that a sentence affects only the life of the criminal and not the lives of his victims. Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded-both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. [Citations omitted].

491 F.3d 668, 672 (7th Cir. 2007). In other words, even if consumers of child pornography do not themselves molest children, their actions directly contribute to the abuse of children.

Here, the defendant made the conscious decision to join group dedicated to the purpose of trading child sexual abuse material. He then chose to distribute child pornography repeatedly in that group and aggressively encouraged others to do the same. He also engaged in a private chat with an undercover officer who he believed to be the father of a young child, and he encouraged the UC to sexually abuse that purported child. A lengthy period of incarceration is necessary to promote respect for the law, ensure just punishment, and to reflect the seriousness of the defendant's offense.

**D.      Deterrence, Protection of the Public, and Needed Treatment**

A substantial sentence of incarceration – to include mental health treatment, sex offender treatment, and substance abuse treatment – is necessary to protect the public from future offending by the defendant and to ensure that he receives necessary treatment prior to release.   The United States asks that the Court impose a sentence of 151 months, followed by fifteen years of supervised release in order to protect the public.  The United States also asks that the Court order the defendant to participate in mental health treatment, sex offender treatment, and substance abuse treatment for the purpose of addressing the factors underlying his high risk of recidivism.

Protecting the public necessarily includes a deterrence component:  a sentence should deter both the defendant and other would-be offenders.  The trafficking of child pornography endangers the public by encouraging the rape, violence, and abuse of children. In *United States v. Miller*, the Fifth Circuit stated:

> [R]eal children are being abused and violated when pornographic images are made. Without a market for such images, and without a strong appetite for more and more images exhibited by [the defendant] and similarly situated defendants, there would be far fewer children who are injured and criminally assaulted in this way.  If a handful of pornographic images taken twenty years ago were sufficient to satisfy the perverse desires of those who possess and traffic in child pornography, we would not have the huge industry that exists internationally today.

665 F.3d 114, 123 (5th Cir. 2011). The importance of deterrence with respect to child pornography offenses is well-established. Serious penalties for child pornography offenders decrease the number of participants in the market, which in turn decreases the need for its production:

> The greater the customer demand for child pornography, the more that will be produced.  Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

*Goldberg*, 491 F.3d at 672; *see also Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand"); *Goff*, 501 F.3d at 261 ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing."); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.").

Here, the defendant's sentence should protect the public by limiting opportunities for reoffending through incarceration and supervised release, should provide treatment for the defendant so as to mitigate the potential for reoffending in the future, and should deter the defendant and others from such crimes in the future. The government's recommended sentence of 151 months' incarceration, fifteen years of supervised release, and treatment serves this purpose.

### E.    Kinds of Sentences Available and the Need to Avoid Unwarranted Sentencing Disparities

Section 3553(a)(6) requires courts to consider the need to avoid unwarranted sentencing disparities among defendants "with similar records who have been found guilty of similar conduct." However, it "does not require the district court to avoid sentencing disparities between [ ] defendants who might not be similarly situated." *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (quoting *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010). Here, the government's recommended sentence is substantially below the Sentencing Guideline's range which, per the plea agreement, both parties have agreed is reasonable. Further, the Judiciary Sentencing Information indicates that in the last five years the average length of imprisonment imposed for

similarly situated defendants was 109 months, while the median length of imprisonment was 97 months. The United States' request for a sentence of 151 months incarceration is reasonable in light of the JISN information and takes into account the defendant's conduct in not just distributing child pornography material, but actively participating in a group dedicated to the purpose of sharing CSAM and repeatedly encouraging others to share CSAM. The government's recommendation also takes into account the defendant's early acceptance of responsibility, and the mitigating information disclosed regarding the defendant's history.

## IV.    The Victims are Entitled to Restitution

18 U.S.C. § 2259 directs that, "notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offenses under this chapter. 18 U.S.C. § 2259(a); *United States v. Hite*, 113 F. Supp. 3d 91, 94 (D.D.C. 2015) ("Pursuant to 18 U.S.C. § 2259, the victims of certain federal crimes, including possession of child pornography, are entitled to mandatory restitution."). Restitution was defined to include "the full amount of the victim's losses," which includes any costs incurred by the victim for:

(A) Medical services relating to physical, psychiatric, or psychological care;
(B) Physical and occupational therapy or rehabilitation;
(C) Necessary transportation, temporary housing, and child care expenses;
(D) Lost income;
(E) Attorneys' fees, as well as other costs incurred; and
(F) Any other losses suffered by the victim as a proximate result of the offense.

*United States v. Hite*, 113 F. Supp. 3d 91, 94 (D.D.C. 2015); 18 U.S.C. § 2259(b)(3). The Court may not decline to issue an order under this section because of the economic circumstances of the defendant. 18 U.S.C. § 2259(B)(i).

In *Paroline v. United States*, 134 S. Ct. 1740 (2014), the United States Supreme Court faced a circuit split over the interpretation of 18 U.S.C. § 2259, specifically over "how to determine the amount of restitution a possessor of child pornography must pay to the victim whose childhood abuse

appears in the pornographic materials possessed." *Paroline*, 134 S. Ct. at 1716. In *Paroline*, the defendant possessed two images of the victim who was seeking restitution. The Court's answer to this question involved three steps.

First, *Paroline* held that, because the statute defined a "victim" as someone "harmed as a result" of the offense, restitution under § 2259 was proper "only to the extent the defendant's offense proximately caused a victim's losses." *Id*. at 1722.

Second, the Court held that "proximate cause" under § 2259 did not require strict but-for causation. *Id*. at 1726-27. Recognizing that under the circumstances of most child pornography possession cases – where losses resulted from harm caused by the trafficking of a victim's images by numerous "geographically and temporally distant offenders acting independently, and with whom the defendant had no contact," *id*. at 1725, the Court held:

> In this special context, where it can be shown that a defendant possessed a victim's images and that a victim had outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

*Id*. at 1727. The Court made clear that, where the victim's losses are "the product of the acts of thousands of offenders," a restitution order should not be "too severe" but must not be merely "a token or nominal amount." *Id.* That is, in part, because a restitution order under § 2259 serves "twin goals," the first being to "help[] the victim achieve eventual restitution for all her child-pornography losses" and second to "impress[] upon offenders the fact that child pornography crimes, even simple possession, affect real victims." *Id.*

Third, the Court provided sentencing courts the following guidance for how to determine the proper amount of restitution under this standard. *Id*. The Court noted that a sentencing court's goal should be to assess "the significance of the individual defendant's conduct in light of the broader

causal process that produced the victim's losses," taking into account any "available evidence." *Id*. at 1727-28. The Court emphasized that there is no "precise mathematical inquiry" governing this determination and that district courts must exercise "discretion and sound judgment" in fashioning restitution awards. *Id*. at 1728. The Court suggested several factors to be considered, including: (1) the number of defendants convicted of possessing the victim's images; (2) the number of future offenders likely to be caught and convicted; (3) whether the defendant had any role in the initial production of the images; (4) whether the defendant reproduced or distributed the images; (5) how many images the defendant possessed; and (6) "other facts relevant to the defendant's relative causal role." *Id*. "These factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders. They should rather serve as rough guideposts for determining an amount that fits the offense." *Id*.

Congress has since amended § 2259 to both codify *Paroline*'s basic approach and to set a restitution floor of $3,000. *See* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299, 132 Stat. 4383 (December 7, 2018).    As detailed in the Restitution Request materials, which will be filed under seal in a separate pleading, numerous victims depicted in the images and videos the defendant possessed and distributed are seeking restitution for costs associated with attending psychotherapy and/or counseling, medications, loss of income, loss of housing, and for various medical expenses.  To date, the following victims have requested restitution from the defendant:

1. "Taylor" (RedGlassesCry series), $3,000

2. "Jenny" (Jenny series), $10,000

3. "Posey" (Purple Cheer  series), $8,000

4. "Lily" (Vicky series), $10,000

5. "Maureen" (Lighthouse series), $10,000

6.  "Sarah" Marineland1 series), $10,000

7.  "Maria" (BestNecklace series), $10,000

8.  "Sloane" (Tara series), $10,000

9.  "Pia" (Sweet White Sugar series) $7,500

10.  "Mya" (Sweet Pink Sugar series), $ 5,000

11.  "Eliza" (HG1 series), $3,000

12.  "Julie" (JBN Flowers 1 series), $10,000

13.  "April" (April Blonde series), $10,000

14.  "SV" (Sparkling Velvet series), $5,000

Pursuant to 18 U.S.C. § 2259, each of the defendant's victims is entitled to restitution for their losses as a result of the defendant either possessing or distributing their images. In conjunction with the restitution requests filed under seal, the United States also included a proposed restitution order for the Court's consideration in advance of sentencing.

**CONCLUSION**

The United States submits that a sentence of 151 months imprisonment with a treatment component, to be followed fifteen years of supervised release, is "sufficient, but not greater than necessary to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

Respectfully submitted,

JEANINE FERRIS PIRRO
INTERMIN UNITED STATES ATTORNEY

By:      _____/s/ Karen L. Shinskie___
Karen Shinskie
DC Bar #1023004
Assistant United States Attorney
United States Attorney's Office
601 D Street, NW
Washington, DC 20530
Phone: (202) 730-6878

# ATTACHMENT A
# PROPOSED RESTITUTION ORDER

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case Number: 24-cr-216 (BEH)** |
| **EDUARDO ZELAYA VIDES,** | : | |
| | : | |
| **Defendant.** | : | |

Upon consideration of the United States' Sentencing Memorandum and Exhibits, IT IS HEREBY ORDERED that the Government's Motion is GRANTED; and:

For the reasons stated on the record at sentencing on July 25, 2025, and as the record herein fully supports, IT IS HEREBY ORDERED that the defendant, Eduardo Zelaya Vides, shall pay restitution, pursuant to 18 U.S.C. §§ 2259, 3663, 3663A, and 3664, for the benefit of the victims, in the amount and to their Attorneys of Record, as detailed below. The total amount of restitution owed by the defendant is $_____.

1) $3,000 to the victim of the Red Glasses Cry series:

   Utah Crime Victims Legal Clinic
   Attn: Taylor
   404 East 4500 South Ste B24
   Salt Lake City, UT 84107

2) $10,000 to the victim of the Jenny series:

   Marsh Law Firm PLLC in trust for Jenny
   Marsh Law Firm PLLC
   Attn: Jenny
   PO Box 4668 #65135
   New York, NY 10163-4668

3) $8,000 to the victim of the PurpleCheer series:

Restore the Child in Trust for Posey
Restore the Child, PLLC
2522 N. Proctor St., Ste 85
Tacoma, Washington, 98406

4) $10,000 to the victim in the Lighthouse1 series:

Deborah A. Bianco
In trust for Maureen
PO Box 6503
Bellevue, WA 98008

5) $10,000 to the victim of the Marineland1 series:

Carol L. Hepburn I/T/F Sarah
PO Box 17718
Seattle, WA 98127

6) $10,00 to the victim of the Best Necklace series:

Carol L. Hepburn I/T/F Maria
PO Box 17718
Seattle, WA 98127

7) $10,000 to the victim of the Tara series:

Carol L. Hepburn I/T/F Sloane
PO Box 17718
Seattle, WA 98127

8) $10,000 to the victim of the Vicky series:

Carol L. Hepburn I/T/F Lily
PO Box 17718
Seattle, WA 98127

9) $5,000 to the victim in the Sweet Pink Sugar series:

Deborah A. Bianco
In trust for Mya
PO Box 6503
Bellevue, WA 98008

10) $7,500 to the victim of the Sweet White Sugar Series:

Deborah A. Bianco
In trust for Pia
PO Box 6503

Bellevue, WA 98008

11) $3,000 for the victim of the HG1 series:

Jones Day
Attn: Amy J. Zigarovich
500 Grant Street, Suite 4500
Pittsburgh, PA 15219-2514

12) $10,000 for the victim of the JBN Flowers 1 series:

Restore the Child in Trust for Julie
Restore the Child, PLLC
2522 N Proctor St., Ste. 85
Tacoma, WA 98406

13) $10,000 for the victim of the AprilBlonde series:

Restore the Child in Trust for April
Restore the Child, PLLC
2522N Proctor St., Ste. 85
Tacoma, WA 98406

14) $5,000 for the victim of the Sparkling Velvet series:

Jones Day on behalf of SV
Jones Day
c/o Sarah Gleason and Tyler Loveall
110 N. Wacker Dr., Suite 4800
Chicago, IL 60606

IS FURTHER ORDERED, that the following shall be ordered and the corresponding language incorporated into the Judgment and Commitment order:

The full sum or amount of ordered restitution is due and payable immediately. This restitution order constitutes an enforceable judgment, consistent with the terms of the Plea Agreement between the United States and the Defendant and pursuant to 18 U.S.C. § 2259, 18 U.S.C. § 3613 (a), (c) and (f) and § 3664 (m)(1)(A). Any payments must be made to the parties at the addresses detailed above. Any schedule of payments imposed by the Court is merely a minimum schedule of payments and will not be the only method, nor a limitation on the methods, available to the United States to enforce the criminal judgment, including without limitation by administrative offset. Consistent with 18 U.S.C. § 3664 (n), "if the [Defendant] receives substantial resources from any source…during a period of incarceration, he will be required to apply the value of such resources to any restitution still owed."

**Imprisonment**. During any period of incarceration in a prison in the United States, payment of any criminal monetary debt (special assessments and restitution) remains due, and the Defendant shall pay, at a minimum, the greater of $25 or 50% of the deposits in his inmate trust account per quarter. The defendant must participate in the Bureau of Prisons' Inmate Financial Responsibility Program while incarcerated.

**After Imprisonment**. Any portion of the criminal monetary debt that remains unpaid at the time of the defendant's release from imprisonment shall be paid at the monthly rate of at least $1000.00, plus 25% of gross monthly income in excess of $2,300. The Court will further assess Defendant's ability to pay following his release from imprisonment.

IT IS FURTHER ORDERED, that once paid, the Clerk's Office shall disburse monies received in satisfaction of restitution to the victims as listed and detailed above.

IT IS FURTHER ORDERED, that consistent with the terms of the Plea Agreement, which was accepted by the Court, the restitution amount of $106,500, with the above-described provisions, is hereby incorporated into the Judgement and Commitment Order for this matter.

SO ORDERED, this _____ day of July, 2025.

_____
THE HONORABLE BERYL E. HOWELL
UNITED STATES DISTRICT COURT JUDGE

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No.  24-cr-216 (BEH)** |
| **v.** | : | |
| | : | |
| **EDUARDO ZELAYA VIDES,** | : | |
| | : | |
| **Defendant.** | : | |

<u>**NOTICE OF FILING OF PROPOSED FORFEITURE ORDER**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby files the attached proposed order of forfeiture in advance of the defendant's sentencing hearing, set for July 25, 2025.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:   <u>*/s/ Karen Shinskie*</u>
Karen Shinskie
Assistant United States Attorney
DC Bar No. 1023004
601 D Street, N.W.
Washington, D.C. 20530
Phone: 202-730-6878
Email: karen.shinskie@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 24-cr-216(BEH)** |
| | : | |
| **EDUARDO ZELAYA VIDES** | : | |
| | : | |
| **Defendant** | : | |
| | : | |

**[PROPOSED] ORDER OF FORFEITURE**

**WHEREAS,** on February 7, 2025, the defendant entered a plea of guilty to one count of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), which the Court accepted on the same date;

**WHEREAS,** within the express terms of the written plea agreement the defendant agreed to forfeit the following property, including: (1) a Black Samsung phone, IMEI 350779535591981; (2) a Samsung Galaxy S9; and (3) a Blue/black Samsung device, which are currently in the custody/or control of the Federal Bureau of Investigation; each of which was seized from the defendant and was involved in or used in violation of Federal law;

**WHEREAS**, pursuant to Rule 32.2(b)(1) of the Federal Rules of Criminal Procedure, this Court determines, based upon the evidence and information before it, that (1) any property, real or personal:  (a) that was involved in, used, or intended to be used to commit or to facilitate the commission of such violations, and any property traceable to such property; (b) constituting or derived from, any proceeds obtained, directly or indirectly, as a result of such violations, and any property traceable to such property; (c) involved in, used, or intended to be used to commit or to facilitate the commission of such violations; and (d) which constitutes or is derived from proceeds traceable to the violations to which the defendant has pled guilty, pursuant to 18 U.S.C. §2253;

2

*WHEREAS*, pursuant to Rule 32.2(b)(1) of the Federal Rules of Criminal Procedure, this Court determines, based upon the evidence and information before it, that the following specific property is subject to forfeiture:  two cellular phones seized from the Defendant and currently in the custody and control of the Federal Bureau of Investigation;

*WHEREAS*, pursuant to Federal Rule of Criminal Procedure 32.2, this Court determines that the Government has established the requisite nexus between the specific property listed in the prior paragraph and the violations to which the defendant has been found guilty;

*WHEREAS*, Title 21, United States Code, Section 853(p) authorizes the forfeiture of substitute property;

*WHEREAS*, upon entry of a forfeiture order, Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure authorizes the Attorney General or a designee to conduct any discovery the Court considers proper in identifying, locating, or disposing of property subject to forfeiture;

*NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED*:

1. That the following property is declared forfeited to the United States, pursuant to Title 18, United States Code, Section 2253:  1) any property, real or personal: (a) that was involved in, used, or intended to be used to commit or to facilitate the commission of such violations, and any property traceable to such property; (b) constituting or derived from, any proceeds obtained, directly or indirectly, as a result of such violations, and any property traceable to such property; (c) involved in, used, or intended to be used to commit or to facilitate the commission of such violations; and (d) which constitutes or is derived from proceeds traceable to the violations alleged in Count 1, pursuant to Title 18, United States Code, Section 2253.

2.  The following specific property is declared forfeited to the United States: (1) a Black

3

Samsung phone, IMEI 350779535591981; (2) a Samsung Galaxy S9; and (3) a Blue/black

Samsung device seized from the defendant and currently in the custody and control of the

Federal Bureau of Investigation.

3.  The Court shall retain jurisdiction to enforce this Order, and to amend it as necessary,
    pursuant to Rule 32.2(e) of the Federal Rules of Criminal Procedure.

4.  Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Order of
    Forfeiture is final as to the defendant and shall be made part of the sentence and included
    in the judgment.

5.  The Attorney General or a designee, pursuant to Rule 32.2(b)(3) of the Federal Rules of
    Criminal Procedure, is authorized to conduct any discovery to identify, locate, or dispose
    of property subject to this Order.

6.  The Clerk of the Court shall forward a certified copy of this Order to
    USADC.AFMLS2@usdoj.gov.

    **IT IS SO ORDERED.**

Dated this _____ day of _____, 2025.


_____
THE HONORABLE BERYL E. HOWELL
United States District Judge

4